UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

Eastern District of Kentucky
FILED
DEC 19 2024
AT LEXINGTON
Robert R. Carr
CLERK U.S. DISTRICT COURT

UNITED STATES OF AMERICA

V.   INDICTMENT NO. 5:24-CR-123-DCR-MAS

DAVID WISDOM

\* \* \* \* \*

**THE GRAND JURY CHARGES:**

1. At all relevant times, **DAVID WISDOM** owned and rented farmland in Barren County and Metcalfe County on which he grew burley tobacco, among other crops. He maintained insurance coverage over his tobacco crop from at least 2014 to 2023.

2. At all relevant times, **DAVID WISDOM** used services offered at Farmers Tobacco Warehouse, located in the Eastern District of Kentucky, to obtain false documentation to support false claims of loss on his crop insurance.

3. The Federal Crop Insurance Corporation ("FCIC") is a wholly-owned U.S. federal government corporation that administers the federal crop insurance program.

## COUNT 1
### 18 U.S.C. § 371

4. Since at least November 2014, and continuing through in or about March 2020, in Boyle County, in the Eastern District of Kentucky and elsewhere,

### DAVID WISDOM

and others knowingly conspired and agreed to commit an offense against the United States, that is, crop insurance fraud, by making false statements and reports for the purpose of influencing, in any way, the actions of the Federal Crop Insurance Corporation ("FCIC"), and companies the FCIC reinsures, upon application, advance, commitment, loan, and insurance agreement or application for insurance or a guarantee, in violation of 18 U.S.C. § 1014.

### Purpose of the Conspiracy

5. It was the purpose of the conspiracy to profit by hiding his tobacco production, in order to obtain larger indemnity payouts from federally insured crop insurance policies.

### Manner and Means

6. In Crop Years 2014 through 2018, **WISDOM** wrote checks to Farmers Tobacco Warehouse, as evidence that he purchased some of the tobacco sold on his contract from Farmer's Tobacco Warehouse. Farmers Tobacco Warehouse always paid **WISDOM** back for these checks, oftentimes reserving some money for itself.

7. For several years, **WISDOM** failed to report tobacco he sold on other people's contracts or in other people's names at Farmers Tobacco Warehouse. **WISDOM** knew that by failing to report his production, he could report a much smaller production amount on his insurance claim of loss, in order to trigger or inflate an indemnity payment on his federal crop insurance claim of loss.

## Overt Acts

8.  In or around December 2015 and January 2016, **WISDOM** provided his crop insurance adjuster with a copy of checks he wrote to Farmers Tobacco Warehouse for $55,319.52, as evidence that he purchased 32,340 pounds of tobacco from Farmers Tobacco Warehouse that was sold on his contract, in efforts to conceal this production from his insurance claim of loss.

9.  In or around January 2017, **WISDOM** provided his crop insurance adjuster with a copy of two checks he wrote to Farmers Tobacco Warehouse for $123,270.65, as evidence that he purchased 72,723 pounds of tobacco from Farmers Tobacco Warehouse that was sold on his contract, in efforts to conceal this production from his insurance claim of loss.

10. In or around January of 2019, **WISDOM** provided his crop insurance adjuster with a copy of check he wrote to Farmers Tobacco Warehouse for $45,500.00, as evidence that he purchased 27,506 pounds of tobacco from Farmers Tobacco Warehouse that was sold on his contract, in efforts to conceal his production from his insurance claim of loss.

11. In or around December 2019 and January 2020, **WISDOM** provided his crop insurance adjuster with copies of checks he wrote to other farmers in the area, claiming to have purchased over 100,000 pounds of tobacco from the other farmers, in efforts to conceal this production from his insurance claim of loss.

12. In or around December 2020 and January 2021, **WISDOM** provided his crop insurance adjuster with copies of checks he wrote to other farmers in the area,

claiming to have purchased over tens of thousands of pounds of tobacco from the other farmers, in efforts to conceal this production from his insurance claim of loss.

All in violation of 18 U.S.C. § 371.

## COUNTS 2 - 5
## 18 U.S.C. § 1014

13. Paragraphs 1 through 3 above are re-alleged and incorporated herein by reference.

14. On or about the dates listed below, in Boyle County, in the Eastern District of Kentucky and elsewhere,

**DAVID WISDOM**

knowingly made false statements and reports for the purpose of influencing, in any way, the action of the FCIC, and companies the FCIC reinsures, upon an application, advance, commitment, loan, and insurance agreement or application for insurance or a guarantee, to wit:

| Count | Date | False Statement or Report |
|---|---|---|
| 2 | February 5, 2015 | For Crop Year 2014, **DAVID WISDOM** signed a production worksheet under penalties of perjury, misrepresenting his production to count. |
| 3 | March 4, 2016 | For Crop Year 2015, **DAVID WISDOM** signed a production worksheet under penalties of perjury, misrepresenting his production to count. |
| 4 | January 20, 2017 | For Crop Year 2016, **DAVID WISDOM** signed a production worksheet under penalties of perjury, misrepresenting his production to count. |
| 5 | January 25, 2019 | For Crop Year 2018, **DAVID WISDOM** signed a production worksheet under penalties of perjury, misrepresenting his production to count. |

Each in violation of 18 U.S.C. § 1014.

## FORFEITURE ALLEGATIONS
## 18 U.S.C. § 982(a)(2)
## 18 U.S.C. § 981(a)(l)(C)
## 28 U.S.C. § 2461(c)

1. By virtue of the commission of the offenses alleged in this Indictment, **DAVID WISDOM** shall forfeit to the United States any and all property, real or personal, which constitutes or is derived from proceeds traceable to the violations of 18 U.S.C. §§ 371 and 1014. Any and all interest that **DAVID WISDOM** has in this property is vested in and forfeited to the United States pursuant to 18 U.S.C. §§ 982(a)(2) and 981(a)(1)(C) and 28 U.S.C. § 2461.

2. The property to be forfeited includes, but is not limited to, the following:

**REAL PROPERTY:**
Real property known as 118 Western Hills Road, Glasgow, Kentucky.

**MONEY JUDGMENT:**
A forfeiture money judgment in the amount of $621,785.00, which represents the approximate amount of proceeds obtained by the Defendant as a result of the violations, offset by the net proceeds realized from the direct forfeiture of any property identified as proceeds of the violations.

3. If any of the property listed above, as a result of any act or omission of the Defendant, (A) cannot be located upon the exercise of due diligence; (B) has been transferred or sold to, or deposited with, a third party; (C) has been placed beyond the jurisdiction of the court; (D) has been substantially diminished in value; or (E) has been commingled with other property which cannot be divided without difficulty, the United States shall be entitled to forfeit substitute property pursuant to 21 U.S.C. § 853(p).

A TRUE BILL

███████████

*signature*

CARLTON S. SHIER, IV
UNITED STATES ATTORNEY

## PENALTIES

**COUNT 1:** Not more than 5 years imprisonment, $250,000 fine or twice the gross gain or loss, and 3 years supervised release.

**COUNTS 2-5:** Not more than 30 years imprisonment, $1,000,000 fine or twice the gross gain or loss, and 5 years supervised release.

**PLUS:** Mandatory special assessment of $100 per count.

**PLUS:** Restitution, if applicable.